IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION
| | |
|---|---|
| Candace Coffey-Watson,<br>　　Plaintiff, | Case No. 3:09-cv-1479-RMG-JRM |
| v. | **ORDER** |
| Michael J. Astrue, Commissioner of Social Security Administration<br>　　Defendant. | |

Through this action, Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI'). Plaintiff appealed pursuant to 42 U.S.C. §§ 405(g) and 1383(c). The matter is currently before the court for review of the Report and Recommendation ("Report") of Magistrate Judge Joseph R. McCrorey made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rules 73.02(B)(2)(a) and 83.VII.02, et seq., D. S.C. For the reasons set forth below, the court adopts the Report, which was filed on June 25, 2010, and affirms the decision of the Commissioner.

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir.1964). This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir.1971). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir.1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir.1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

The Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the record as adequate to support that determination. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The Commissioner's findings of fact are not binding, however, if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir.1987).

## DISCUSSION

The Magistrate Judge recommends that the court affirm the Commissioner's decision. (Dkt. No. 28). On July 13, 2010, Plaintiff filed an objection to this recommendation arguing only that the

Commissioner's conclusions do not accurately reflect or evaluate the medical evidence and treating physicians opinions. (Dkt. No. 29).[1] On July 27, 2010, the Commissioner filed a response to Plaintiff's objection. (Dkt. No. 31). As noted above, while this court must uphold a decision by the Commissioner that is supported by substantial evidence, this court reviews *de novo* any portion of the Report to which either party specifically objects.

In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. The regulations require the ALJ to consider, in sequence:

> 1) whether the claimant is engaged in substantial gainful activity;
> 2) whether the claimant has a "severe" impairment;
> 3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 4, Subpart P, Appendix 1 ("the Listings"), and thus is presumptively disabled;
> 4) whether the claimant can perform his past relevant work; and
> 5) whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *Id.*

At the administrative level, after a thorough review of the evidence and testimony in the case, the ALJ concluded that Plaintiff was not disabled and, therefore, not entitled to the benefits and income sought. (Tr. p. 25). After a careful *de novo* review and consideration of the evidence and

---

[1] Plaintiff makes no specific objection as to the Magistrate's Report and Recommendation as to her credibility and, therefore, this Order does not address this portion of the Report and Recommendation and adopts the Magistrate's analysis with regard to same. (*See* Dkt. No. 28 at pp. 12-19).

arguments presented, this Court finds that there is substantial evidence in the record to support the conclusion of the ALJ that Plaintiff was not disabled as that term is defined in the Social Security Act. Accordingly, the denial of benefits is affirmed as detailed herein.

## I. Background

From a comprehensive review of the Record, Plaintiff's primary problems are lower and upper (neck) back pain and migraine headaches. Her back pain caused her difficulty with walking and getting out of bed. She has undergone radiofrequency application ("RFA") for treatment of her pain and taken prescription medications but those remedies have only provided some relief from her complaints. Plaintiff's migraines last as long as four to six days and occur about every other week. She receives injections for her migraines if they last more than three days and if oral medications do not work. Plaintiff asserts that she is not able to sit or stand for more than fifteen to twenty minutes, then must change position. She testified that she has difficulty lifting a gallon of milk and must use both hands when lifting it.

## II. Medical Record

Plaintiff objections to the Magistrate's Report and Recommendation claiming that the medical evidence was not properly evaluated. As demonstrated herein, the record contains substantial medical evidence to support the ALJ's decision to deny benefits.

First, it is very telling that none of the physician's opined that Plaintiff had any disabling limitation and none of the physician's placed restrictions on Plaintiff's activities. Second, in reviewing the objective findings of Plaintiff's impairments (Tr. 19-22), the ALJ noted that, as of January 19, 2005, Plaintiff had never tried physical therapy. (*See* Tr. 191).

As to specific documentation from physicians in the Record, Orthopedist Anthony Afong's

examination on that date revealed negative straight leg raising and no spinal tenderness. (Tr. 192). The ranges of motion for her neck and all four extremities were within functional limits; her lumbar spine range of motion was somewhat reduced. Plaintiff's gait was normal despite Plaintiff's alleged difficulties with leg functioning (*see, e.g.*, Tr. 119-22, 150) and her caregivers consistently found her gait to be normal (*e.g.*, Tr. 187, 189, 316, 339).

Two weeks after her alleged date of onset, Plaintiff underwent magnetic resonance imaging ("MRI") of both her lumbar and cervical spines. (Tr. 196-99). The lumbar study showed minimal bulging with no stenosis at levels L4-L5 and minimal bulging with facet arthropathy at L5-S1. (*See* Tr. 183). The cervical study revealed mild osteophytes at C5-C6 and C6-C7 without stenosis. When Plaintiff consulted with surgeon Devin Datta in May 2005, his exam showed some tenderness but, again, negative straight leg raising. (Tr. 183). After review of Plaintiff's MRI studies, Dr. Datta concluded that surgery was not warranted. Plaintiff also saw neurologist Khaled Kamel in Aiken, with complaints of upper and lower back pain and radiation into her right extremities. (Tr. 232-34). Plaintiff underwent nerve conduction and electromyograph studies of her extremities, but these were normal. (*See* Tr. 231). Dr. Kamel revised Plaintiff's diagnosis from possible cervical radiculopathy and carpal tunnel syndrome to musculoskeletal pain with "[n]o nerve or muscle damage appreciated." (*See* Tr. 234; Tr. 231).

In objecting to the ALJ's finding and the Magistrate's Report and Recommendation, Plaintiff argues that the ALJ "cherry pick[ed] the evidence" and ignored evidence supporting her allegations. (Dkt. No. 29). Such contentions are without merit based on this Court's *de novo* review of the Record. Substantial evidence exits to affirm the ALJ's decision. The ALJ's conclusions and opinion are based, in most places, verbatim from doctor's records. For example, the ALJ quotes extensively

from Dr. Datta's records regarding Plaintiff's spine and disks. (*See* Tr. 183). There is no error in an ALJ using the findings of a neurosurgeon for the basis of his findings and conclusions. The law is clear, an ALJ is, for medical purposes, a layman, and must rely upon an expert's interpretation of medical studies. *See Jackson v. Astrue*, 2010 WL 500449 (D.S.C. February 5, 2010) (noting that ALJ's are laymen with respect to interpreting medical records and must rely on the opinions of doctors).

Plaintiff also argues that the ALJ failed to recognize her diagnosis of radiculopathy. (Dkt. No. 29 at p. 4). Dr. Datta, the neurosurgeon, who did review Plaintiff's MRIs, assessed her with mild degenerative disc disease of her cervical and lumbar spine, chronic neck and bilateral arm pain, and chronic low back and leg pain. (Tr. 183). Further, the ALJ acknowledged that a physician's assistant with Dr. Datta's practice diagnosed Plaintiff with lumbalgia (lower back pain) with radiculopathy and cervicalgia (neck pain) with radicular complaints secondary to degenerative disk disease. (Tr. 19 (citing Tr. 190)). The ALJ added that Dr. Kamel, another neurologist, changed his diagnosis from possible right cervical radiculopathy to musculoskeletal pain without nerve or muscle damage. (Tr. 20 (citing Tr. 231)). This Court finds no error in the ALJ's findings on this point.

In her opening briefing, Plaintiff argued that the ALJ erred because the ALJ's finding that her lower back pain and neck pain constitute "severe" impairments (Tr. 16) is not reflected in limitations on sitting, standing, or walking. The ALJ found that Plaintiff's severe impairments were lower back pain, neck pain and migraine headaches and in the ALJ's hypothetical to the vocational expert (*see* Tr. 63-64), the following limitations were considered: "No lifting or carrying over 20 pounds occasionally, 10 pounds frequently."; "Only occasional stooping, crouching, and climbing of stairs or ramps."; and" No climbing of ladders." (Tr. 63). Thus, the ALJ did attribute some

limitations to Plaintiff's severe impairments of neck and low back pain. The ALJ attributed the limitations despite the fact that none of Plaintiff's caregivers suggested specific functional limitations for her.

## CONCLUSION

For the reasons set forth above, this court adopts the Report and Recommendation of the Magistrate Judge and affirms the decision of the Commissioner.

**IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court

September 28, 2010
Charleston, South Carolina